In the Matter of the Construction of the Will of HERNAND BEHN, Deceased.

Surrogate's Court, New York County, May 31, 1951.

*Luke B. Lockwood, Walter A. Kernan* and *Glen B. Miller, Jr.,* for Sosthenes Behn, as executor of Hernand Behn, deceased, petitioner.

*Walter D. Fletcher* and *Laurence D. Kieran* for Sosthenes Behn, individually, respondent.

*John G. Jackson, George B. Brooks* and *Robert A. Hack* for Elisabeth Behn and others, respondents.

*Gillespie & O'Connor* for Catholic Charities of the Archdiocese of New York, respondent.

*Mitchell, Capron, Marsh, Angulo & Cooney* for National City Bank of New York, as trustee, respondent.

*Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee* of counsel), respondent, in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law.

*John F. Keating,* special guardian for Patricia I. Powell and others, infants, **respondents.**

Collins, S. The questions raised in this proceeding for a construction of the will are disposed of as follows:

(1) In this unusual will knowledge of the facts and circumstances surrounding its execution was essential to the ascertainment of the true intention of the testator. Accordingly the court holds that extrinsic evidence was admissible. (*Matter of Smith,* 254 N. Y. 283; *Matter of Hertzig,* 177 Misc. 598; *Matter of Baker,* 174 Misc. 93.)

(2) It appears that the testator and his brother, the legal life tenant, had an understanding that the survivor of them would untangle, salvage and liquidate the jointly held property so that the proceeds could be enjoyed by the family of the one first to die. No evidence has been presented, however, which establishes a definite enforcible agreement. The surviving brother has testified to a vague understanding under which he was to determine when and how the property was to be turned over to the decedent's family. This is the type of secret arrangement that the courts have referred to as dangerous. (*Reynolds v. Reynolds,* 224 N. Y. 429, 433; *Matter of O'Hara,* 95 N. Y. 403, 422; *Matter of Koehler,* 190 Misc. 897, 900, 901.) The fact that the surviving brother wishes to perform in full his idea of his understanding with his deceased brother cannot alter the situation. The court is compelled to hold that there is no secret trust capable of enforcement that may be impressed on the legal life estate.

(3) The court is satisfied that the only purpose of the testator in conferring the legal life estate on his brother was to give him the longest possible time and the broadest possible powers to liquidate the jointly held assets for the benefit of the testator's family. Where an intermediate estate is let in for any such purpose it does not postpone the vesting of the ulterior gifts but merely postpones the time of payment. (*Matter of Embree,* 9 App. Div. 602, affd. on opinion below, 154 N. Y. 778; *Robert v. Corning,* 89 N. Y. 225; *Matter of Lamb,* 182 App. Div. 180, affd. 224 N. Y. 577; *Matter of Beckmann,* 158 Misc. 706; *Matter of Clark,* 120 Misc. 191.) Here the testator never intended that the duration of his brother's life would have anything to do with the vesting of his gift of two thirds of the residuary estate. He clearly intended this gift to vest when his youngest child became twenty-one. Since this event has occurred two thirds of the residuary estate is now vested in the four children of the testator. The law favors the vesting of estates at the earliest possible moment. (*Matter of Chalmers,* 264 N. Y. 239; *Matter of Watson,* 262 N. Y. 284; *Connelly v.*

*O'Brien,* 166 N. Y. 406; *Matter of Evans,* 165 Misc. 752, affd. 258 App. Div. 1037, affd. 284 N. Y. 571; *Matter of Meyer,* 162 Misc. 426.)

(4) The court holds that the proposed renunciation of the life estate will be completely valid and effectual. It appears that the testator never intended his brother to have any monetary benefit from the life estate. As stated above the life estate was given so that the brother would have complete control over the liquidation of the jointly held assets. The only real argument against the validity of the proposed renunciation is that it is not timely. The rule is that renunciation must be made within a reasonable or equitable time under all the circumstances. (*Oliver* v. *Wells,* 254 N. Y. 451, 459.) What is a reasonable or equitable time varies in each case. No one contends here that the rights of third parties have intervened preventing a renunciation or that anyone's property rights will be adversely affected thereby.

Until the present time the life tenant has never been put to his election to accept or renounce the income since there has never been any income from the residuary estate. He believes it his duty however to make a formal renunciation of the life estate in order to carry out the real intention and testamentary plan of his deceased brother. Under the circumstances of this case I hold the proposed renunciation is timely and will be valid and effectual to divest the life tenant of whatever interest he has in the residuary estate.

Submit decree on notice construing the will accordingly.