**OLD COLONY TRUST COMPANY, Executor of the Estate of John H. Cunningham, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 7428.

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1970.

Decided March 26, 1970.

George E. Donovan, Boston, Mass., with whom Albert L. Hyland and Lyne, Woodworth & Evarts, Boston, Mass., were on brief, for appellant.

Daniel B. Rosenbaum, Atty., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty Gen., Lee A. Jackson and Loring W. Post, Attys., Dept. of Justice, and Herbert F. Travers, Jr., U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The sole question in this case is whether the estate of a settlor [1] of an inter vivos trust, who was a trustee until the date of his death, is to be charged with the value of the principal he contributed by virtue of reserved powers in the trust. The executor paid the tax and sued for its recovery in the district court. All facts were stipulated. The court ruled for the government, 300 F.Supp. 1032, and the executor appeals.

The initial life beneficiary of the trust was the settlor's adult son. Eighty per cent of the income was normally to be payable to him, and the balance added to principal. Subsequent beneficiaries were the son's widow and his

---

[1]. Actually, the decedent was a donor to three trusts, similar in form, previously established by his wife—differences which we ignore as inconsequential.

issue. The powers upon which the government relies to cause the corpus to be includible in the settlor-trustee's estate are contained in two articles. A third article, purporting to limit the personal liability of the trustees for acts of mismanagement, although relied on by the government, has no bearing on the questions in this case because it does not affect the meaning, extent or nature of the trustees' duties and powers. Briggs v. Crowley, 1967, 352 Mass. 194, 224 N.E. 2d 417. We will not consider it further.

Article 4 permitted the trustees to increase the percentage of income payable to the son beyond the eighty per cent,

> "in their absolute discretion * * * when in their opinion such increase is needed in case of sickness, or desirable in view of changed circumstances."

In addition, under Article 4 the trustees were given the discretion to cease paying income to the son, and add it all to principal,

> "during such period as the Trustees may decide that the stoppage of such payments is for his best interests."

Article 7 gave broad administrative or management powers to the trustees, with discretion to acquire investments not normally held by trustees, and the right to determine, what was to be charged or credited to income or principal, including stock dividends or deductions for amortization. It further provided that all divisions and decisions made by the trustees in good faith should be conclusive on all parties, and in summary, stated that the trustees were empowered, "generally to do all things in relation to the Trust Fund which the Donor could do if living and this Trust had not been executed."

The government claims that each of these two articles meant that the settlor-trustee had "the right * * * to designate the persons who shall possess or enjoy the [trust] property or the income therefrom" within the meaning of section 2036(a) (2) of the Internal Revenue Code of 1954, 26 U.S.C. § 2036(a) (2), and that the settlor-trustee at the date of his dealth possessed a power "to alter, amend, revoke, or terminate" within the meaning of section 2038(a) (1) (26 U.S.C. § 2038(a) (1)).

If State Street Trust Co. v. United States, 1 Cir., 1959, 263 F.2d 635, was correctly decided in this aspect, the government must prevail because of the Article 7 powers. There this court, Chief Judge Magruder dissenting, held against the taxpayer because broad powers similar to those in Article 7 meant that the trustees "could very substantially shift the economic benefits of the trusts between the life tenants and the remaindermen," so that the settlor "as long as he lived, in substance and effect and in a very real sense * * * 'retained for his life * * * the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom; * * *.'" 263 F.2d at 639–640, quoting 26 U.S.C. § 2036(a) (2). We accept the taxpayer's invitation to reconsider this ruling.

It is common ground that a settlor will not find the corpus of the trust included in his estate merely because he named himself a trustee. Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74. He must have reserved a power to himself [2] that is inconsistent with the full termination of ownership. The government's brief defines this as "sufficient dominion and control until his death." Trustee powers given for the administration or management of the trust must be equitably exercised, however,. for the benefit of the trust as a whole. Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589; United States v. Powell, 10 Cir., 1962, 307 F.2d 821; Scott, Trusts §§ 183, 232 (3d ed. 1967); Rest. 2d, Trusts §§

---

**2.** The number of other trustees who must join in the exercise of that power, unless the others have antagonistic interests of a substantial nature is, of course, imma-

terial. Treas.Reg. § 20.2036–1(a) (ii), (b) (3) (i) (1958); § 20.2038–1(a) (1958).

183, 232. The court in *State Street* conceded that the powers at issue were all such powers, but reached the conclusion that, cumulatively, they gave the settlor dominion sufficiently unfettered to be in the nature of ownership. With all respect to the majority of the then court, we find it difficult to see how a power can be subject to control by the probate court, and exercisable only in what the trustee fairly concludes is in the interests of the trust and its beneficiaries as a whole, and at the same time be an ownership power.

The government's position, to be sound, must be that the trustee's powers are beyond the court's control. Under Massachusetts law, however, no amount of administrative discretion prevents judicial supervision of the trustee. Thus in Appeal of Davis, 1903, 183 Mass. 499, 67 N.E. 604, a trustee was given "full power to make purchases, investments and exchanges * * * in such manner as to them shall seem expedient; it being my intention to give my trustees * * * the same dominion and control over said trust property as I now have." In spite of this language, and in spite of their good faith, the court charged the trustees for failing sufficiently to diversify their investment portfolio.

The Massachusetts court has never varied from this broad rule of accountability,[3] and has twice criticized *State Street* for its seeming departure. Boston Safe Deposit & Trust Co. v. Stone, 1965, 348 Mass. 345, 351, n. 8, 203 N.E. 2d 547; Old Colony Trust Co. v. Silliman, 1967, 352 Mass. 6, 8–9, 223 N.E. 2d 504. *See also*, Estate of McGillicuddy, 54 T.C. No. 27, 2/17/70, CCH Tax Ct.Rep. Dec. 29, 1965. We make a further observation, which the court in *State Street* failed to note, that the provision in that trust (as in the case at bar) that the trustees could "do all

things in relation to the Trust Fund which I, the Donor, could do if * * * the Trust had not been executed," is almost precisely the provision which did not protect the trustees from accountability in Appeal of Davis, *supra*.

■■ We do not believe that trustee powers are to be more broadly construed for tax purposes than the probate court would construe them for administrative purposes. More basically, we agree with Judge Magruder's observation that nothing is "gained by lumping them together." State Street Trust Co. v. United States, *supra*, 263 F.2d at 642. We hold that no aggregation of purely administrative powers can meet the government's amorphous test of "sufficient dominion and control" so as to be equated with ownership.

This does not resolve taxpayer's difficulties under Article 4. Quite different considerations apply to distribution powers. Under them the trustee can, expressly, prefer one beneficiary over another. Furthermore, his freedom of choice may vary greatly, depending upon the terms of the individual trust. If there is an ascertainable standard, the trustee can be compelled to follow it.[4] If there is not, even though he is a fiduciary, it is not unreasonable to say that his retention of an unmeasurable freedom of choice is equivalent to retaining some of the incidents of ownership. Hence, under the cases, if there is an ascertainable standard the settlor-trustee's estate is not taxed, United States v. Powell, *supra*; Jennings v. Smith, *supra*; Estate of Budd, 1968, 49 T.C. 468; Estate of Pardee, 1967, 49 T.C. 140, but if there is not, it is taxed. Henslee v. Union Planters Nat'l Bank & Trust Co., 1949, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259; Hurd v. Com'r, 1 Cir., 1947, 160 F.2d 610; Michigan Trust Co. v. Kavanagh, 6 Cir., 1960, 284 F.2d 502.

3. Cf. Briggs v. Crowley, supra; Copp v. Worcester County Nat'l Bank, 1964, 347 Mass. 548, 551, 199 N.E.2d 200; Corkery v. Dorsey, 1916, 223 Mass. 97, 101, 111 N.E. 795.

4. *See, e. g.*, Old Colony Trust Co. v. Rodd, 1970 Mass.A.S. 25, 254 N.E.2d 886, trustee of trust to provide "comfortable support and maintenance," rebuked for "parsimonious" exercise of judgment.

The trust provision which is uniformly held to provide an ascertainable standard is one which, though variously expressed, authorizes such distributions as may be needed to continue the beneficiary's accustomed way of life.[5] Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; *cf*. United States v. Commercial Nat'l Bank, 10 Cir., 1968, 404 F.2d 927, cert. denied 393 U.S. 1000, 89 S.Ct. 487, 21 L.Ed.2d 465; Blodget v. Delaney, 1 Cir., 1953, *supra*. On the other hand, if the trustee may go further, and has power to provide for the beneficiary's "happiness," Merchants Nat'l Bank v. Com'r of Internal Revenue, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, or "pleasure," Industrial Trust Co. v. Com'r of Internal Revenue, 1 Cir., 1945, 151 F.2d 592, cert. denied 327 U.S. 788, 66 S.Ct. 807, 90 L.Ed. 1014, or "use and benefit," Newton Trust Co. v. Com'r of Internal Revenue, 1 Cir., 1947, 160 F.2d 175, or "reasonable requirement[s]," State Street Bank & Trust Co. v. United States, 1 Cir., 1963, 313 F.2d 29, the standard is so loose that the trustee is in effect uncontrolled.

In the case at bar the trustees could increase the life tenant's income "in case of sickness, or [if] desirable in view of changed circumstances." Alternatively, they could reduce it "for his best interests." "Sickness" presents no problem. Conceivably, providing for "changed circumstances" is roughly equivalent to maintaining the son's present standard of living. *But see* Hurd v. Com'r, of Internal Revenue, *supra*. The unavoidable stumbling block is the trustees' right to accumulate income and add it to capital (which the son would never receive) when it is to the "best interests" of the son to do so. Additional payments to a benefici-

ary whenever in his "best interests" might seem to be too broad a standard in any event. In addition to the previous cases see Estate of Yawkey, 1949, 12 T.C. 1164, where the court said, at p. 1170,

> "We can not regard the language involved ['best interest'] as limiting the usual scope of a trustee's discretion. It must always be anticipated that trustees will act for the best interests of a trust beneficiary, and an exhortation to act 'in the interests and for the welfare' of the beneficiary does not establish an external standard."

Power, however, to decrease or cut off a beneficiary's income when in his "best interests," is even more troublesome. When the beneficiary is the son, and the trustee the father, a particular purpose comes to mind, parental control through holding the purse strings. The father decides what conduct is to the "best interests" of the son, and if the son does not agree, he loses his allowance. Such a power has the plain indicia of ownership control. The alternative, that the son, because of other means, might not need this income, and would prefer to have it accumulate for his widow and children after his death, is no better. If the trustee has power to confer "happiness" on the son by generosity to someone else, this seems clearly an unascertainable standard. *Cf*. Merchants Nat'l Bank v. Com'r of Internal Revenue, *supra*, 320 U.S. at 261–263, 64 S.Ct. 108.

■ The case of Hays' Estate v. Com'r of Internal Revenue, 5 Cir., 1950, 181 F.2d 169, is contrary to our decision. The opinion is unsupported by either reasoning or authority, and we will not follow it. With the present settlor-trustee free to determine the standard himself, a finding of ownership control was

---

5. Many of the cases we are about to cite consider whether there is an ascertainable standard with a different object in view, viz., whether the amount of uninvaded corpus there provided to go ultimately to charity could be reliably predicted, so as to permit an estate tax deduction under 26 U.S.C. § 2055(a) (2). While the purpose of inquiry is different, we believe the existence and measurability of a standard to be the same. Cf. Treas. Reg. § 20.2055–2(a) (1958); 4 Mertens, Law of Fed. Gift & Estate Tax. § 28.38.

warranted. To put it another way, the cost of holding onto the strings may prove to be a rope burn. State Street Bank & Trust Co. v. United States, *supra*.

Affirmed.