ESTATE OF EDWARD E. HOENIG, MORGAN GUARANTY TRUST COMPANY OF NEW YORK AND SAMUEL S. ZUCKERBERG, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 869-74.      Filed June 15, 1976.

*Thomas J. McGrath,* for the petitioners.
*Marion L. Westen* and *Theodore J. Kletnick,* for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $108,583.54 in Federal estate taxes. We must decide if a legacy bequeathed to the decedent by his wife, Ethel G. Hoenig, and renounced by his executors subsequent to his death, is includable in his gross estate for purposes of the Federal estate tax.

FINDINGS OF FACT

Certain facts have been stipulated and are so found.

Edward E. Hoenig, the decedent, died a resident of New York, N.Y., on May 6, 1970. On June 3, 1970, his last will and testa-

ment was admitted to probate and letters testamentary were issued to his executors by the Surrogate's Court, New York County. A United States estate tax return was filed for the decedent's estate with the District Director of Internal Revenue, Manhattan District, New York, N.Y., on July 29, 1971. The executors' residences and principal places of business were at New York, N.Y., when the petition herein was filed.

The decedent's wife, Ethel G. Hoenig (Ethel), died unexpectedly on April 25, 1970, at 77 years of age. She was survived by the decedent, age 84, and the only child of their marriage, Jeanne F. Milne (Jeanne), age 41.

Ethel's last will and testament, dated January 6, 1969, was admitted to probate by the Surrogate's Court, New York County, on June 30, 1970. It provided as follows in pertinent part:

THIRD: I give and bequeath unto my husband, EDWARD E. HOENIG, an amount equal to one-half of the value of my adjusted gross estate, as finally determined for Federal Estate tax purposes, together with one-half of the security value from date of my decease to the date of distribution, less the value of any property and interests in property qualifying for said marital deduction which pass or have already passed from me to my husband in a form which qualifies for said deduction under any other provisions of this Will, by operation of law or otherwise.

It is my intention hereby to obtain not less than maximum marital deduction allowable under Section 2056 of the Internal Revenue Code of 1954; that all provisions of this Will be construed and applied so as to give full effect to that intention; that if the effect of any provisions of this Will would be to prevent the allowance of the full marital deduction, then such provision shall not apply to the said fund, and so far as the said fund and this administration are concerned, the Will shall be read, construed and take effect as if such provision did not exist.

\* \* \*

SIXTH: ALL THE REST, RESIDUE AND REMAINDER of my estate, real, personal or mixed, of whatsoever kind, nature and description, and wheresoever situate of which I may die seized or possessed or to which I may in any manner be entitled, or over which I may have any power of disposition or appointment (and this is to be deemed the exercise of such power), I give devise and bequeath unto my Trustees NEVERTHELESS IN TRUST, for the following uses and purposes:

To invest and reinvest the same in interest bearing securities not limited by law, and to keep the same invested and to receive and collect the rents, interest, income, issues and profits thereof, and pay all of the income therefrom unto my daughter, JEANNE F. MILNE in quarterly or more frequent installments until she shall have arrived at the age of 50 years, when the trust herein created for her said benefit shall cease and terminate, and the principal together with the

accrued income therefrom shall be paid to my said daughter, JEANNE F. MILNE absolutely and forever.

In the event of [sic] any exigency, an extraordinary illness or other circumstance or condition shall arise which may require or necessitate the expenditure of extra funds for the benefit of my said daughter, I hereby authorize and empower my said trustees in their discretion to pay and advance unto my daughter out of the principal of said trust fund any sum that they may deem necessary and advisable for that purpose, which in no event shall exceed more than $5,000. in any one year.

\* \* \*

NINTH: I do hereby nominate, constitute and appoint my husband, EDWARD E. HOENIG as Executor and Trustee of my Last Will and Testament, and I direct no bond, surety or security be required of my said Executor and Trustee for the faithful performance of the duties hereunder; that should my said husband, EDWARD E. HOENIG predecease me, or in the event that my husband and I die simultaneously by accident or as a result of a common catastrophe, then and in that event I hereby nominate, constitute and appoint MORGAN GUARANTY TRUST COMPANY OF NEW YORK and SAMUEL S. ZUCKERBERG, as substitute-executors and trustees of this my Last Will and Testament, the latter of whom shall act without compensation, and I direct that no bond, security or surety be required of my said substitute-executors and trustees for the faithful discharge of their duties hereunder.

At the time of Ethel's death the decedent was an invalid afflicted with a terminal illness and was expected to die shortly. A will which he had signed on May 29, 1969, provided as follows in pertinent part: [1]

THIRTEENTH: Anything herein to the contrary notwithstanding, in the event that my wife, ETHEL DOROTHY HOENIG predeceases me leaving our daughter, JEANNE MILNE surviving, then and in that event, and in addition to any bequest made to her herein and on her behalf, I give and bequeath an amount equal to the estate tax value in the estate of my said wife of all property which I may have inherited from my said wife, ETHEL, unto my daughter, JEANNE MILNE, if she survives me, or if not, to her lawful issue me surviving, in equal shares per stirpes. Any distribution of property in kind on account of this bequest shall be deemed to satisfy this bequest to the extent of the fair market value of such property on the date of its distribution.

\* \* \*

NINETEENTH: I hereby nominate, constitute and appoint my wife, ETHEL DOROTHY HOENIG, and MORGAN GUARANTY TRUST COMPANY OF NEW YORK, a New York Corporation having its principal office in the City of New York, to be Executors of and Trustees under this my Will. I direct that no bond or other security shall be required of either of them in any jurisdiction in which they may be required to serve.

In the event that my wife, ETHEL DOROTHY HOENIG, should die, resign or cease to act for any reason whatsoever, then and in that event I hereby

---

[1] This was the will admitted to probate on June 3, 1970.

nominate, constitute and appoint my son-in-law, SAMUEL S. ZUCKERBERG, as substitute Executor and Trustee in her place and stead, who shall act without compensation, and direct that no bond or other security shall be required of him in any jurisdiction in which he may be required to serve.

On May 2, 1970, members of the Hoenig family met with their attorneys and a representative of the Morgan Guaranty Trust Co. of New York. At that meeting it was decided that the decedent should disclaim the legacy to which he was entitled under Ethel's will. An instrument of disclaimer was prepared by the attorneys and delivered to the Hoenig home for the decedent's signature on May 4, 1970. By that time the decedent was in extremis. He died on May 6, 1970, without having executed the instrument.

On August 10, 1970, Jeanne executed an instrument entitled "Consent to Renunciation and Disclaimer" which provided:

The undersigned, JEANNE F. MILNE, a beneficiary under the will of Edward E. Hoenig, deceased, who was the surviving spouse of the above Ethel G. Hoenig, deceased, does hereby, as a beneficiary under the Will of Edward E. Hoenig, deceased, completely and unqualifiedly consent and agree to have the executors of the Will of Edward E. Hoenig, deceased, renounce, disclaim and refuse any and all testamentary dispositions made for and to the said Edward E. Hoenig under and by virtue of the Will of Ethel G. Hoenig, dated January 6, 1969 and duly admitted to probate by this Court on June 30, 1970.

On that same date the decedent's executors executed an instrument entitled "Renunciation and Disclaimer of Testamentary Disposition" which provided:

The undersigned, SAMUEL S. ZUCKERBERG and MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as executors of the Will of Edward E. Hoenig, deceased, who was the surviving spouse of the above Ethel G. Hoenig, deceased, do hereby completely and unqualifiedly renounce, disclaim and refuse to accept any and all testamentary dispositions made for said Edward E. Hoenig under and by virtue of the Will of the above Ethel G. Hoenig, dated January 6, 1969 and duly admitted to probate by this Court on June 30, 1970.

Theretofore no distributions had been made out of Ethel's estate to either the decedent or his estate, nor have any been made subsequently.

Statutory notice of the deficiency in issue was mailed on November 8, 1973.

OPINION

The decedent, Edward E. Hoenig, died while he was entitled to receive a legacy under the will of his wife, Ethel, who had predeceased him by 11 days. Three months after the decedent's

death his executors executed an instrument purporting to disclaim the legacy on behalf of his estate.

Section 2001, I.R.C. 1954, as amended,[2] imposes a transfer tax upon the termination by death of any of the legal incidents of property through which the use or economic enjoyment of that property may be controlled. Cf. *Chase Nat. Bank v. United States,* 278 U.S. 327, 335 (1929).[3]

At issue is whether the legacy disclaimed by the decedent's executors is to be included in his gross estate for purposes of section 2001.

If the legacy is not to be included in the decedent's gross estate, it must be established as a threshold matter that under the law of New York, the disclaimer of the legacy by the decedent's executors prevented title to the property bequeathed from vesting in him. *Hardenbergh v. Commissioner,* 198 F.2d 63, 66 (8th Cir. 1952), affg. 17 T.C. 166 (1951), cert. denied 344 U.S. 836 (1952).

Under the common law of New York, a testamentary legacy is an offer to the legatee of the property bequeathed to him. Pending an affirmative act demonstrating his acceptance of the legacy, the legatee is free to disclaim it, provided he does so soon enough after the death of the testator and the probate of his will that the property rights of others not be prejudiced by the disclaimer. If the legatee fails to act affirmatively within such a span of time, he is conclusively presumed to have accepted the legacy. *Albany Hospital v. Hanson,* 214 N.Y. 435, 108 N.E. 812 (1915); *In Re Wilson's Estate,* 298 N.Y. 398, 83 N.E.2d 852 (1949); *In Re Behn's Estate,* 201 Misc. 12, 106 N.Y.S.2d 118 (N.Y. County Surr. Ct. 1951).

If a legacy is accepted, the legatee's title to the property bequeathed to him relates back to the date of the testator's death. If, on the other hand, the legacy is disclaimed, title is deemed never to have vested in the legatee. *Albany Hospital v. Hanson, supra.*

We must decide if under the law of New York the executor of a deceased legatee can disclaim a testamentary legacy.

---

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[3] Sec. 2001. * * * A tax * * * is hereby imposed on the transfer of the taxable estate * * * of every decedent, citizen or resident of the United States * * *

A statutory enactment currently in force in New York authorizes the executor of a testamentary legatee to disclaim legacies to which the legatee may have been entitled at the time of his death. N.Y. Est., Powers & Trusts Law sec. 3-3.10 (McKinney Supp. 1975). Being effective as of November 3, 1971, that statute is inapplicable in this instance, *Estate of Schloessinger,* 70 Misc.2d 206, 333 N.Y.S.2d 683 (N.Y. County Surr. Ct. 1972); *Estate of Cooper,* 73 Misc.2d 904, 342 N.Y.S.2d 995 (Onondaga County Surr. Ct. 1973), but the Surrogate's Court, New York County, has held that under common law the executor of a testamentary legatee is vested with authority similar to that conferred upon him by the statute. *In Re Klosk's Estate,* 169 N.Y.L.J. 21 (Feb. 14, 1973).

Under *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), we are not bound to follow *Klosk* in applying the law of New York; we shall do so in this instance, however, owing to the special competence of the Surrogate's Court[4] and to the significant authority which supports its holding. 6 Page, Wills, sec. 49.5 (Bowe-Parker rev. 1962); *In Re Howe's Estate,* 112 N.J. Eq. 17, 163 A. 234 (Prerog. Ct. 1932).

Section 3-3.10, N.Y. Est., Powers & Trusts Law, establishes procedures for the disclaimer of a testamentary legacy. Those procedures, however, have no application in this instance. *In Re Klosk's Estate, supra.* The common law of New York prescribes no specific procedure for the disclaimer of a testamentary legacy, *In Re Weinig's Estate,* 66 Misc.2d 216, 320 N.Y.S.2d 341 (Nassau County Surr. Ct. 1971), other than to require that it be effected by an affirmative act. *In Re Wilson's Estate, supra.*

Having first obtained the consent of the sole party whose property interest would be affected by the action which they proposed to take, the executor of the decedent's estate executed an instrument plainly purporting to disclaim the legacy to which the decedent was entitled under Ethel's will. Theretofore, neither the decedent nor his executors had accepted distributions of the property bequeathed to him, nor had they otherwise purported to exercise dominion or control over it. In our opinion the disclaimer was effective under the common law of New York

---

[4] N.Y. Const. art. VI, sec. 12(d): The surrogate's court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder * * *

and prevented title to the property bequeathed to the decedent from ever having vested in him.

If disclaiming a legacy prevents title to the property bequeathed from vesting in the legatee under applicable State law, Federal law will recognize the effect of the disclaimer for purposes of section 2001 under certain circumstances. *Brown v. Routzahn,* 63 F.2d 914, 917 (6th Cir. 1933), cert. denied 290 U.S. 641 (1933); cf. *Keinath v. Commissioner,* 480 F.2d 57, 61 (8th Cir. 1973), revg. on other grounds 58 T.C. 352 (1972). A legacy effectively disclaimed under State law will be excluded from the gross estate of the legatee if the disclaimer has been made within a reasonable time as understood in Federal precedents. Cf. *First National Bank of Montgomery v. United States,* 176 F. Supp. 768, 775 (M.D. Ala. 1959).

A reasonable time does not necessarily terminate upon the death of the legatee where, as in this instance, applicable State law authorizes his executor to disclaim the legacy. *Perkins v. Phinney,* an unreported case (W.D. Tex. 1961, 7 AFTR 2d 1753, 61-1 USTC par. 11,997).

A reasonable time may be deemed to have elapsed if benefits have been derived from the legacy, *First National Bank of Montgomery v. United States, supra;* cf. *Kathryn S. Fuller,* 37 T.C. 147, 155 (1961), or if the legatee has waited for events to disclose whether acceptance or disclaimer is the most advantageous course to be pursued. Cf. *Pauline Keinath,* 58 T.C. 352, 359 (1972), revd. on other grounds 480 F.2d 57 (8th Cir. 1973).

In this instance neither the decedent nor his executors accepted any distributions out of the legacy which was subsequently disclaimed; nor did any of them otherwise purport to exercise dominion or control over it; nor was there any waiting upon events. From the moment of Ethel's death it was apparent that the decedent could nowise benefit from the legacy to which he was entitled under her will. Whether the decedent accepted or rejected the legacy, it would be applied upon his death, which was expected shortly, to the benefit of Jeanne, the common object of his and Ethel's bounty. Reason therefore dictated from the first that the legacy be disclaimed. See and compare *Perkins v. Phinney, supra.* This was done in compliance with the law of New York within the relatively brief period of 4 months from Ethel's death.

Respondent maintains that the disclaimer under consideration was part of a scheme in avoidance of taxation and for that reason should not be recognized for Federal estate tax purposes. This contention implies an incongruity of form and substance such as was found to exist in *Pauline Keinath, supra.* The disclaimer there in issue was so long delayed that it was deemed for purposes of Federal law to have been preceded by an acceptance. We therefore held that the disclaimer was in substance a transfer by the legatee of the property which had been bequeathed to him.

The form of the disclaimer now being considered was, in contrast, wholly consonant with its substance. Under the circumstances it would be unwarranted to withhold recognition from the disclaimer merely because the tax imposed under section 2001 might consequently be reduced. See *Estate of George C. Mackie,* 64 T.C. 308, 313 (1975), on appeal (4th Cir., Nov. 24, 1975).

We therefore hold that the legacy to which the decedent was entitled under the will of his wife and which was disclaimed by his executors subsequent to his death is not includable in his gross estate for purposes of the Federal estate tax.

*Decision will be entered under Rule 155.*