ESTATE OF GENEVIEVE ROLIN, DECEASED, HAYDEE ROLIN AND MARINE MIDLAND BANK-NEW YORK, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5766–73. Filed September 15, 1977.

*John L. Gray, Jr., Mark S. Rapaport, John T. McCafferty,* and *Keith G. McWalter,* for the petitioner.
*Michael A. Menillo,* for the respondent.

QUEALY, *Judge:* Respondent determined a deficiency in the amount of $74,435.80 in petitioner's estate tax. In an amendment to his answer, respondent determined that this amount should be increased to $99,280.98.

The only issues for decision are as follows:

(1) Whether the disclaimer and renunciation by the decedent's executors of decedent's interest in the marital deduction trust created by decedent's husband was effective so as to exclude the value of that trust from decedent's taxable estate;

(2) Whether decedent had a general power of appointment over the assets of the nonmarital trust created by decedent's husband so as to include the value of that trust in decedent's taxable estate.

All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Genevieve Rolin, hereinafter sometimes referred to as decedent, died testate on January 31, 1969. At the time of her death, decedent was a resident of Scarsdale, N.Y. Her will was admitted to probate by the Surrogate's Court of Westchester County, N.Y., on May 12, 1969. On that same day, letters testamentary were issued to Haydee Rolin and the Marine Midland Bank-New York, as executors of her estate.

These executors are the petitioners herein. At the time the petition was filed, petitioner Haydee Rolin, resided in San Anselmo, Calif., and petitioner Marine Midland Bank, was a New York corporation with offices in New York city, N.Y. The Federal estate tax return for the Estate of Genevieve Rolin was filed with the District Director of Internal Revenue, Manhattan, N.Y.

Decedent's husband, Daniel H. Rolin, had created a revocable trust under a trust agreement dated April 28, 1958. The entire net income of this trust was paid to Mr. Rolin during his lifetime. All of the assets of the trust as of the date of Mr. Rolin's death were included as part of his adjusted gross estate. Mr. Rolin's will directed that his entire residuary estate be added to this trust.

The trust agreement provided that upon the death of Mr. Rolin, the property of the trust should be divided into two

separate trusts referred to as trust A and trust B. Trust A was to have a value equal to the maximum marital deduction allowable in determining the Federal estate tax payable in Mr. Rolin's estate reduced by the value of all other property included in his taxable estate qualifying for the marital deduction. Trust B was to consist of the balance of the trust property. Decedent was to receive the income from both trust A and trust B for her life and was given the power to appoint the whole or any part of the principal of trust A to her estate or to any person, corporation, or other organization by specific reference to such power of appointment in her will. The decedent was aware of this general power of appointment at the time the trust was created or shortly thereafter.

Subparagraph (3) of paragraph C of article I of the trust agreement provided as follows:

(3) The Grantor's wife (or after her death her executor or administrator) may disclaim or renounce either in whole or in part her interest under Trust A, in which event so much of her interest as is so disclaimed or renounced shall be disposed of as a part of Trust B. Any such disclaimer or renunciation shall be made by written instrument and delivered to the corporate Trustee within fourteen months after the death of the Grantor.

Paragraph C of article II, which is entitled "Invasion of Principal," provides as follows:

C. No Trustee shall have any power to pay or apply or to join with any other Trustee in paying or applying any principal to or for the benefit of himself or herself.

Paragraphs A and B of article V, which is entitled "Investment and Administrative Provisions," provide as follows:

A. Except as provided in paragraph B of this Article, the Trustee is authorized, in the Trustee's absolute discretion, with respect to any property, real or personal, including accumulated income, at any time held under any provisions of this Agreement, and without authorization by any court:

To retain such property; to sell, mortgage, lease (for any term, whether or not extending beyond the term of any trust created by this Agreement or the term fixed by any law) or otherwise dispose of any or all thereof upon any terms; to hold all or any part thereof uninvested for any period of time except that this authorization shall not apply to Trust A; to invest and reinvest in any securities or other property, real or personal, domestic or foreign, income or nonincome producing, including preferred and common stocks, interests in investment trusts and participations in any legal or

discretionary common trust funds maintained by any bank or trust company at any time acting as trustee hereunder, all without regard to any law concerning the investment of funds by fiducuaries, except that no investment shall be made for Trust A which would disqualify the property constituting said Trust for the marital deduction allowable in the United States estate tax proceeding in the Grantor's estate; to manage, maintain, alter, improve, develop or abandon any real personal property; to grant any options in connection with any of the foregoing; to foreclose mortages or to continue mortgage investments; to consent to the modification or extension of any note, bond, mortgage, open account indebtedness or other obligation, whether or not secured or evidenced by any writing; to exercise or dispose of any options, privileges or rights of any nature; to vote by discretionary proxy or otherwise; to become a party to any voting trust agreement whether or not extending beyond the term of any trust created by this Agreement; to assent to, participate in or oppose any type of reorganization, readjustment, recapitalization, consolidation, merger, sale of assets,dissolution or other action of, by or with respect to any corporation and to take any action in connection therewith; to adjust, compromise and settle or refer to arbitration any claim in favor of or against any trust created by this Agreement; to borrow money for any purposes; to employ and pay the compensation of legal counsel and other agents; to hold property in the name of the Trustee without designation of any fiduciary capacity or in the name of a nominee or unregistered; to make any division or distribution of property in kind or otherwise and to allot any property or an undivided interest therein to any trust, part, fund or share under this Agreement, except that any such division, distribution or allocation shall comply with the requirements of Article I of this Agreement; to pay any expenses in connection with any of the foregoing and to charge the same to income or principal or in part to each; and generally to exercise all such rights and powers and to do all such acts as the Grantor might do with respect to such property if he were living and the absolute owner thereof.

B. So long as the Grantor is acting as a Trustee hereunder and is mentally competent he shall have the sole power to exercise the powers, duties and authority granted to the Trustee by paragraph A of this Article and during such period the corporate Trustee shall have no liability or responsiblity with respect thereto except that the corporate Trustee shall from time to time make recommendations as to the investment and reinvestment of the trust fund.

By amendment dated February 13, 1967, Mr. Rolin revoked paragraph B of article V and substituted the following:

B. Notwithstanding the foregoing provisions of this Agreement, so long as the Grantor's wife, Genevieve Rolin, is living and mentally competent, the Trustee shall exercise all the powers, duties and authority granted by paragraph A of this Article in accordance with written directions given to the Trustee from time to time by the Grantor's wife and during such period neither the individual Trustee nor the corporate Trustee shall have any liability or responsibility with respect thereto, except that the corporate

Trustee from time to time shall make recommendations as to the investment and reinvestment of the trust fund.

Mr. Rolin died on September 30, 1968. Approximately 1 week later on October 7, 1968, the decedent executed a letter of acceptance of her appointment as trustee pursuant to paragraph A of article IX of the trust agreement. Mr. Rolin's will was admitted to probate on January 7, 1969, by the Surrogate's Court of Westchester County, N.Y. On that same day, letters testamentary were issued to the decedent and the Marine Midland Bank, as executors of his estate.

Prior to Mrs. Rolin's death on Jaunary 31, 1969, no steps had been taken to divide the trust into trust A and trust B in accordance with its provisions and the decedent never received any income from trust A nor did she ever attempt to exercise her right to withdraw principal from the marital trust or otherwise indicate her acceptance of her interest under trust A.

Article Six of decedent's will expressly stated that she did not intend to exercise any power of appointment which she might have at the time of her death. Article Seven authorizes her executors "to exercise or dispose of any options, privileges or rights of any nature" and "generally to exercise all such rights and powers and do all such acts as [she] might do with respect to such property, if [she] were living and the absolute owner thereof." On May 27, 1969, within 15 days after their appointment as Mrs. Rolin's executors and less than 8 months after Mr. Rolin's death, the executors of decedent's estate executed an instrument purporting to disclaim and renounce in whole and irrevocably any and all interest which Mrs. Rolin had or might have in trust A. This instrument was singed, acknowledged, and delivered to the corporate trustee in accordance with the terms of the trust agreement.

Accepting this renunciation as valid, the executors of Mr. Rolin's estate did not claim a deduction for the value of trust A in the Federal estate tax return filed for his estate. And the executors of Mr. Rolin's estate did not include the value of trust A in her Federal estate tax return.

Under article I, paragraph C(3), of the trust agreement, a valid renunciation of decedent's interest in trust A would result in the assets of trust A being added to the assets of

trust B. Respondent determined that the value of both trust A and trust B should be included in Mrs. rolin's estate because she had, at her death, general powers of appointment over the assets of these trusts.

## Trust A

Respondent considers the executor's purported renunciation of decedent's interest in trust A to be, in effect, an attempted renunciation of her general power of appointment over the assets in trust A. If such renunciation is invalid the assets in trust A would be included in decedent's gross estate under section 2041(a).[1]

In order for a disclaimer or renunciation of a power to be valid for Federal estate tax purposes, it must be unequivocal and effective under local law and be made within a reasonable time after learning of the existence of the power. See sec. 20.2041–3(d)(6), Estate Tax Regs.;[2] First *National Bank of*

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

Sec. 2041(a) provides as pertinent herein:

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—
    * * *

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. * * *

[2] Sec. 20.2041–3(d)(6), Estate Tax Regs., as pertinent provides as follows:

The disclaimer or renunciation must be unequivocal and effective under local law. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. There can be no disclaimer or renunciation of a power after its acceptance. In any case where a power is purported to be disclaimed or renounced as to only a portion of the property subject to the power, the determination as to whether or not there has been a complete and unqualified refusal to accept the rights to which one is entitled will depend on all the facts and circumstances of the particular case, taking into account the recognition and effectiveness of such a disclaimer under local law. Such rights refer to the incidents of the power and not to other interests of the decedent in the property. If effective under local law, the power may be disclaimed or renounced without disclaiming or renouncing such other interests. In the absence of facts to the contrary, the failure to renounce or disclaim within a reasonable time after learning of its existence will be presumed to constitute an acceptance of the power.

*Montogomery v. United States,* 176 F.Supp. 768, 775 (M.D. Ala. 1959), affd. 285 F.2d 123 (5th Cir. 1961).

Respondent contends first that New York law does not provide for the renunciation by decedent's executors of a power of appointment created by an inter vivos trust. Respondent also contends that the renunciation was not made within a reasonable time after the creation of the power under the provisions of the trust agreement as executed in 1958.

As to the first issue, respondent would concede that under the reasoning of this Court in *Estate of Dreyer v. Commissioner,* 68 T.C. 275 (1977), and *Estate of Hoenig v. Commissioner,* 66 T.C. 471 (1976), a renunciation of a *testamentary* gift or disposition by an executor under New York law is valid for Federal estate tax purposes.

Under the common law of New York, it is clear that a decedent's executors would have the authority to renounce a *testamentary* disposition to the decedent where such a renunciation is made within a reasonable time. *In Re Klosk's Estate,* 169 N.Y.L.J. 21 (1973). In *Klosk's Estate,* the Court followed the general rule[3] that, unless a contrary intention is indicated by the provisions of the will, the right of acceptance is not ended by the death of the devisee or legatee who had such right. Such right may be exercised by his executor or administrator.

However, respondent would distinguish between the renunciation by the life beneficiary of his interest in a *testamentary* trust and the renunciation of such interest in an inter vivos trust. There is no basis in law for such distinction. In fact, the so-called inter vivos trust which is involved in this case is nothing more than a transfer intended to take effect in possession and enjoyment after the death of the grantor. The grantor retained the right of enjoyment during his lifetime with the unqualified right to revoke. Until the death of the grantor, nothing happened.

The respondent would seem to confuse such situation with the common law rule that there can be no renunciation with respect to property of an intestate passing by force of law, so that those so entitled by law to inherit property, have no

---

[3] See 6 W. Bowe & D. Parker, Page on Wills, sec. 49.5 (1962).

power to prevent the vesting of title in themselves. See *Hardenbergh v. Commissioner,* 198 F.2d 63 (8th Cir. 1952). However, there is no corresponding rule with respect to the vesting of property sought to be transferred by a gift inter vivos. In fact, it is axiomatic that in the case of a gift the putative donee must accept the property sought to be given to him. See *In Re Seyffert's Estate,* 192 N.Y.S.2d 148, 20 Misc.2d 799 (N.Y. County Surr. Ct. 1959); *In Re Roosevelt's Will,* 73 N.Y.S.2d 821, 190 Misc. 341 (Dutchess County Surr. Ct. 1947). Likewise, any beneficiary of an inter vivos trust who has not accepted a beneficial interest under the trust may disclaim or renounce such interest if he renounces it within a reasonable period. *In Re Ryan's Will,* 73 N.Y.S.2d 295 (N.Y. County Sup. Ct. 1947).[4]

The authority for the renunciation of decedent's interest in trust A by her executors was specifically provided for in both the trust instrument and her own will. The trust agreement in article I, paragraph C(3), provides the authority for Mrs. Rolin, or after her death her executor, to disclaim or renounce her interest in trust A by written declaration of such intent to the corporate trustee within 14 months after the death of Mr. Rolin. The authority for the decedent's executors to make such a renunciation is provided in article Seven, paragraph A, of decedent's will.

It is clear that the decedent never accepted her interest in the trust during her lifetime. She never received any income from the trust nor did she exercise her power to withdraw any of the principal. Her executors transmitted the renunciation to the corporate trustee on May 27, 1969, within 15 days after their appointment and less than 8 months after the death of Mr. Rolin. Accordingly, we conclude that since the common law of New York recognizes that the right of renunciation is not a personal one to the decedent and would survive her death and the decedent in her will specifically empowered her executors to exercise such right, the New York courts would uphold the validity of the form of this renunciation.

Respondent also contends that the renunciation was not made within a reasonable time. Respondent argues that the

---

[4] 1 A. Scott, Trusts, sec. 36.1 (3d ed. 1967); 2 G. Bogert, Trusts and Trustees, sec. 170 (2d ed. 1965).

reasonable time for the renunciation of a power of appointment would run from the creation of the inter vivos trust in 1958. To substantiate this, respondent relies on section 20.2041–1(e), Estate Tax Regs., which states that a power created by an inter vivos instrument is considered as created on the date the instrument takes effect, whether or not it is exercisable at that time. However, it is clear from the context that this section is only intended to define what constitutes a post-1942 or pre-1942 power of appointment.

Moreover, under New York law, the reasonable time for renunciation would not begin to run until the interest is indefeasibly fixed both in quality and quantity. *In Re Estate of Mixter*, 372 N.Y.S.2d 296, 83 Misc.2d 290 (N.Y. County Surr. Ct. 1975). The same rule has been recognized for Federal tax purposes. *Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973). Such a rule should be applied here.

The decedent's interest in trust A was not fixed under the provisions of the revocable trust until her husband died and she survived him. This is the point at which she became obligated to accept or renounce the interest. The 8-month period in which her interest was renounced is under the facts and circumstances here a reasonable period.

### Trust B

Trust B was to consist of the balance remaining of the inter vivos trust after first setting aside the marital deduction (trust A). The decedent was to receive the income from this trust during her lifetime.

Respondent contends the assets of this trust should also be included in the decedent's estate. As we understand it, it is respondent's position that the administrative authority provided the decedent, under the terms of the trust agreement and its amendments, was such that she had an absolute power of disposition over the trust assets which constituted a general power of appointment. The existence of such authority would result in the inclusion of these assets in decedent's estate. *Miller v. United States*, 387 F.2d 866 (3d Cir. 1968); *Pittsburgh National Bank v. United States*, 319 F.Supp. 176 (W.D. Pa. 1970).

Respondent bases his contention on the fact that the decedent had broad authority under the administrative

powers of the trust agreement (art. V, pars. A and B) to direct the nature and scope of the trust investments. These powers included her "absolute discretion" to dispose of any or all trust property on any terms and generally:

to exercise all such rights and powers and to do all such acts as the Grantor might do with respect to such property if he were living and the absolute owner thereof.

Respondent argues that as the decedent held these powers in an individual capacity, rather than in her capacity as trustee, she was not bound by any fiduciary duty in their exercise.

However, the New York courts would impose such a fiduciary duty on the decedent regardless of whether such authority was given to her in an individual capacity. *Carrier v. Carrier,* 226 N.Y. 114, 123 N.E. 135 (1919); *Osborn v. Bankers Trust Co.,* 5 N.Y.S.2d 211, 168 Misc. 392 (N.Y. County Sup. Ct. 1938); *In Re Grossman's Estate,* 215 N.Y.S.2d 968, 29 Misc.2d 526 (N.Y. County Surr. Ct. 1961). See also *Estate of King v. Commissioner,* 37 T.C. 973 (1962).

In *Estate of King,* we determined that where a grantor had reserved similar powers he had in effect under the laws of New York made himself a fiduciary. As such, he was not at liberty to administer the trust for his own benefit or to ignore the rights of the beneficiaries, even though he would be permitted wide latitude in the types of investments he could make. The close similarity of that factual situation to the one here requires the same findings. See also *Old Colony Trust Co. v. United States,* 423 F.2d 601 (1st Cir. 1970), where the court reached a similar result under Massachusetts law.

Further, the decedent, as a trustee, was prohibited from making discretionary payments of principal to herself. The trust agreement in article II, paragraph C, provides that no trustee shall have any power to pay any amounts of principal "to or for the benefit of himself or *herself.*" (Emphasis added.) Additionally, the New York Estates, Powers & Trusts Law[5]

---

[5] Section 10–10.1 of the New York Estates, Powers & Trusts Law (McKinney 1967), provides as follows:

A power conferred upon a person in his capacity as trustee of an express trust to make discretionary distribution of either principal or income to himself or to make discretionary allocations in his own favor of receipts or expenses as between principal and income, cannot be exercised by him. If the power is conferred on two or more

not only prohibits distribution of principal by a trustee to himself but extends this prohibition to the making of all distributions or allocations which could benefit the trustee-beneficiary.

In light of these prohibitions, it is difficult to understand how the decedent could exercise her investment power, which under New York law must be exercised in a fiduciary capacity, for her own benefit.

Moreover, we fail to understand how such investment power could constitute a general power of appointment. The decedent, either individually or as a trustee, had no authority to withdraw principal for her own benefit. Whatever discretion was permitted in the allocation of items to income or principal or in the distribution of amounts of principal under the provisions of the trust agreement was given solely to the corporate trustee.

Additionally, unlike the cases relied on by respondent, the decedent had no authority to terminate the trust and have the assets distributed directly to herself. Consequently, we can find no basis for concluding that the decedent had a general power of appointment over the assets in trust B.

*Decision will be entered under Rule 155.*

trustees, it may be executed by the trustees who are not so disqualified. If there is no trustee qualified to execute the power, its execution devolves on the supreme court, except that if the power is created by will, its execution devolves on the surrogate's court having jurisdiction of the estate of the donor of the power.

