ESTATE OF MARY KING PATTERSON, DECEASED, JAMES J. PATTERSON, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Patterson v. Commissioner
Docket No. 15864-79.
United States Tax Court
T.C. Memo 1983-381; 1983 Tax Ct. Memo LEXIS 411; 46 T.C.M. (CCH) 618; T.C.M. (RIA) 83381; June 27, 1983. Roger E. Williams and Leonard F. Binder, for the petitioner. Jack H. Klinghoffer, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in the Federal estate tax of the estate of Mary King Patterson, deceased, James J. Patterson, executor, in the amount of $1,490,362.96. Due to concessions by the parties, the issue remaining for decision is whether the value of 58-1/6 shares of Tribune Company stock should be included in decedent's estate for Federal estate tax purposes.
All of the facts have been stipulated and are found accordingly. The address of the estate of Mary King Patterson, deceased, James J. Patterson, executor, at the time the petition in this case was filed was Townley & Updike, 405 Lexington Avenue, New York, New York. [1] A timely estate tax return (Form 706) was filed on behalf of the estate of Mary King Patterson *413 with the Internal Revenue Service Center, New York, New York. Mary King Patterson (decedent) died testate on December 27, 1975. At the time of her death, decedent resided in the State of New York. Decedent's son, James J. Patterson, is the executor of her estate. Decedent was the widow of Joseph Medill Patterson (Mr. Patterson), who had died testate on May 26, 1946. In 1932, Robert R. McCormick, Mr. Patterson and another person formed the McCormick-Patterson Trust (the M-P Trust). The M-P Trust corpus consisted of 1,070 shares of Tribune Company stock, which composed approximately 53 percent of the Tribune Company outstanding stock. Each share of stock was denominated as a "unit" of the trust. The purpose of the M-P Trust was to retain family *414 control over the Tribune Company. [2] All trustees and successor trustees were either family members or closely associated with the Tribune Company. The trustees voted all shares or units as a block. At the time of Mr. Patterson's death in 1946, he owned 196-7/8 units of the M-P Trust. The terms of the M-P Trust provided for its continuation until 20 years after the death of the survivor of Robert R. McCormick and Mr. Patterson. Mr. McCormick died on April 1, 1955, and the M-P Trust terminated on April 1, 1975. Prior to his marriage to decedent, Mr. Patterson had married Alice Higinbotham Patterson. Three daughters were born of this marriage, which terminated in 1938. On June 16, 1938, Alice Higinbotham Patterson and Mr. Patterson entered into an agreement which provided that if Mr. Patterson later gave or bequeathed any portion of his beneficial interest in the M-P Trust to his son, who had been born to Mr. Patterson and decedent on March 23, 1923, he would simultaneously give or bequeath a portion of such beneficial interest to his daughters.
*415 Prior to their July 1938 marriage, decedent and Mr. Patterson entered into an Antenuptial Agreement on June 27, 1938. Articles FIRST, THIRD, and FOURTH of the Antenuptial Agreement provided in part with respect to Mr. Patterson's interest in the M-P Trust: FIRST: Joseph Medill Patterson agrees that he will not in his lifetime give away in excess of sixty-six and two-thirds per cent (66-2/3%) of his beneficial interest, or sell, exchange or otherwise dispose of in excess of sixty-six and two-thirds per cent (66-2/3%) of his beneficial interest for anything less than a full and adequate consideration therefor, provided that in making any such gift, sale, exchange or disposition, he shall not leave himself in such a position that he cannot comply with the provisions of said agreement, * * * and also with the provisions of this agreement. THIRD: Joseph Medill Patterson further agrees that he will execute his Last Will and Testament immediately after his marriage to Mary King and that he will in such Last Will and Testament provide as follows: A. Thirty-three and one-third per cent (33-1/3%) of his beneficial interest shall be given and bequeathed outright to Mary King *416 if Mary King shall be living at the time of the death of Joseph Medill Patterson, and if, in addition, his said son shall have predeceased him leaving no widow or descendant or descendants living at the time of the death of Joseph Medill Patterson: B. A life estate in and to sixteen and two-thirds per cent (16-2/3%) of his beneficial interest shall be given and bequeathed to Mary King if Mary King shall be living at the time of the death of Joseph Medill Patterson, and if, in addition, his said son shall then be living, or, if deceased, his said son shall leave a widow or descendant or descendants then living. Remainders over in and to said sixteen and two-thirds per cent (16-2/3%) of his beneficial interest shall be given and bequeathed: 1. To his said son if living at the time of the death of Mary King; or 2. If his said son shall predecease Mary King leaving a widow or descendant or descendants living at the time of her death, to such widow or descendant or descendants in such proportions as Mary King shall in her last will and testament direct and, upon her failure so to direct, to such widow and descendant or descendants, share and share alike, such descendants, as among *417 themselves, to take perstirpes and not percapita; or 3. If his said son shall predecease Mary King leaving no widow or descendant or descendants living at the time of her death, to the then living brothers and sisters of his said son and to the then living descendant or descendants of any deceased brothers and sisters, perstirpes and not percapita.
C. Sixteen and two-thirds per cent (16-2/3%) of his beneficial interest shall be given or bequeathed to such Trustee as Joseph Medill Patterson shall name and appoint in his Last Will and Testament if Mary King shall be living at the time of the death of Joseph Medill Patterson, and if, in addition, his said son shall then be living or, if deceased his said son shall leave a widow or descendant or descendants then living. Such Trustee shall hold such sixteen and two-thirds per cent (16-2/3%) of his beneficial interest upon such uses, purposes and trusts as Joseph Medill Patterson shall in his sole discretion deem advisable, provided, however, that such uses, purposes and trusts shall include the following: 1. Upon the date that his said son becomes of such age in excess of twenty-one (21) years, *418 as Joseph Medill Patterson shall in his sole discretion determine and set forth in his Last Will and Testament, the Trustee shall distribute all of the principal of the Trust to his said son; FOURTH: Joseph Medill Patterson May, instead of making any of the provisions in his Last Will and Testament set forth in Article THIRD hereof, give outright in his lifetime sixteen and two-thirds per cent (16-2/3%) of his beneficial interest to Mary King and sixteen and two-thirds per cent (16-2/3%) of his beneficial interest to his said son, provided, however, that at the time of such gifts his said son shall have become twenty-one (21) years of age. Upon the making of such gifts all agreements, terms and conditions contained in said Article THIRD shall be deemed fully satisfied and discharged. In consideration of the promised beneficial interest, decedent in the Antenuptial Agreement agreed that-- the benefits to her set forth in this agreement are intended as a provision in lieu of any statutory share given by the laws of any jurisdiction to her in the estate or property of Joseph Medill Patterson, and Mary King hereby waives any right of election which she may at any time have *419 to take part of the estate or property of Joseph Medill Patterson against any Last Will and Testament of Joseph Medill Patterson, but such waiver shall not affect the rights of Mary King to any of the benefits provided for her hereinabove. Mr. Patterson and decedent resided in the State of New York from a time prior to their signing the Antenuptial Agreement until their respective deaths. [3] Mr. Patterson executed his last will and testament on October 9, 1944. He died on May 26, 1946, and his will was probated in the Surrogate's Court of Westchester County, New York. In his will, Mr. Patterson made specific bequests to his daughters, his son, and decedent. In Article FIFTH he made a bequest of 66-2/3 percent of his residual estate to his daughters, and of the balance, one-half to decedent and one-half to his son. [4]
*420 In pertinent part, Article SEVENTH of Mr. Patterson's will provided: SEVENTH: I give and bequeath my beneficial interest in the so-called "McCormick-Patterson Trust", created by agreement dated May 5, 1932, as amended and supplemented, as defined in that certain agreement dated June 16, 1938, by and between me and my former wife ALICE HIGINBOTHAM PATTERSON, to my Trustees, hereinafter named, to be held according to the following terms, trusts and conditions: I. This trust shall terminate: A. Twenty (20) years after the death of the survivor of Robert R. McCormick and myself; or B. Upon the death of the survivor of my wife, MARY KING PATTERSON, and my daughter-in-law, DOROTHY CLARKE PATTERSON, whichever event shall first occur. II. The Trustees shall divide the trust estate into two (2) funds to be known as Fund A and Fund B. III. Fund A shall be that part of my beneficial interest which would have passed to my daughters or the survivors of them and their descendants under Article FIFTH above if my said beneficial interest had been included as a part of the rest, residue and remainder of my estate therein disposed of. Fund B shall consist of the balance of my said *421 beneficial interest.
B. Fund B shall be divided into two (2) equal separate trusts which shall be held and disposed of as follows: (1) If my said son, JAMES PATTERSON, shall survive me, my Trustees shall pay the entire net income from one of these separate trusts to him until the termination of this trust, at which time my Trustees shall transfer, assign and deliver the principal of such separate trust to him as his own absolute property. In case my said son shall die after my death, but prior to the termination of this trust, my Trustees shall, until the termination of this trust, pay over and distribute the net income from such separate trust as such son shall have appointed and provided by deed or will among his widow, child, children or grandchildren, and, in case of his having failed to so appoint and provide, then unto his widow and children from time to time living, the child or children of a deceased child to stand and take in lien of the deceased parent, and my Trustees shall, upon the termination of this trust, transfer, assign and deliver the principal of such separate trust as such son shall have appointed and provided by deed or will among that class of persons designated *422 above, and, in case of his failure to so appoint and provide, then unto his widow and child or children, share and share alike, the child or children of a deceased child to stand and take in lien of the deceased parent. Upon the death of my said son, either before my death or after my death, but before termination of this trust, leaving him and me surviving no widow or child, children or grandchildren, then such separate trust as then constituted shall be merged with the separate trust created for my wife, MARY KING PATTERSON, and disposed of, as provided with respect thereto in the following subparagraph (2). (2) In case my said wife, MARY KING PATTERSON, shall survive me, my Trustees shall pay the entire net income from the other of such separate trusts created out of Fund B unto her until the termination of this trust, whereupon my Trustees shall transfer, assign and deliver the principal of such separate trust to my said wife as her own absolute property. In case my said wife shall die after my death, but prior to the termination of this trust, my Trustees shall hold, dispose of or distribute this separate trust as she, by her Last Will and Testament, shall appoint and provide, *423 and if she shall fail to so appoint and provide, or if she shall predecease me, my Trustees shall merge this separate trust with the separate trust created for my said son, JAMES PATTERSON, to be thereafter held and disposed of in the same manner, as provided with respect to the separate trust created for him, provided, however, if, prior to the termination of this trust, my said son, his widow and his child, children and grandchildren shall predecease my said wife, then on the termination of this trust, if my said wife is not then living, whatever remains of Fund B shall be transferred, conveyed, assigned and delivered by my Trustees as my said wife, MARY KING PATTERSON, shall have appointed and provided by her Last Will and Testament, and in case of her failure to so appoint and provide, then Fund B, as then constituted, shall be merged with Fund A and disposed of as hereinabove provided with respect to Fund A in subparagraph A of paragraph III above. Decedent was named as one of three trustees of the trust created by Mr. Patterson's will. Decedent acted as a trustee of the testamentary trust from August 16, 1946, until its termination on April 1, 1975. James J. Patterson *424 became a trustee of the testamentary trust on March 22, 1971.Decedent and her son were two of the three trustees of the testamentary trust from March 22, 1971, until November 15, 1974; thereafter, they were the only trustees until the testamentary trust terminated. Commencing in 1948, decedent acted as a trustee of the M-P Trust; she resigned on January 22, 1969, in favor of her son who continued as a trustee of the M-P Trust until its termination on April 1, 1975. [5] Neither decedent nor her son received any commission or other compensation for their services. The employees of a New York subsidiary of the Tribune Company maintained the books and attended to all administrative matters of the testamentary trust. They paid to decedent all dividends on the Tribune Company stock underlying the decedent's interest in the testamentary trust. Expenses were not charged directly or indirectly against decedent or the beneficial interest *425 given to her or against income received by her on her beneficial interest. Instead, certain expenses were charged periodically against miscellaneous assets in the testamentary trust.
On April 1, 1975, when the testamentary trust and the M-P Trust each terminated, the Tribune Company issued shares of its common stock pursuant to directions received from the then-owners of the M-P Trust. The Tribune Company issued a stock certificate for 58-1/6 shares in the name of "Mary K. Patterson, Life Tenant U/A JUN 27-38" pursuant to directions given in November 1974 by the testamentary trust trustees, decedent, decedent's son, and F. M. Flynn. The meaning of the stock certificate legend is "Mary K. Patterson as life tenant under the agreement dated June 27, 1938." [6] Prior to April 1, 1975, no owners of the M-P Trust possessed any stock certificate or other instrument indicating ownership of any interest in the M-P Trust. On June 6, 1968, decedent executed her last will and testament which in Article FIFTH provided: *426 FIFTH: The attempted grant of the power of appointment given to me under Article SEVENTH of the last will and testament of my late husband, Joseph Medill Patterson, contravenes a certain agreement made by my said husband and me June 27, 1938 and is therefore void. I intentionally refrain from exercising or attempting to exercise said power in this my will, and anything contained in Article SIXTH hereof shall not be deemed in any way to exercise said power. On March 31, 1975, decedent executed a codicial to her last will and testament. In pertinent part, Article SECOND of the codicil specified: SECOND: Article FIFTH of my said will is hereby amended by designating the existing Article FIFTH as paragraph A thereof and by adding the following paragraph B to said Article FIFTH: B. The attempted limitation to me of the remainder interest in the trust for my benefit under Article SEVENTH B(2) of said last will and testament of my late husband, JOSEPH MEDILL PATTERSON, further contravenes said agreement of June 7, 1938, which provided for the grant to me of a life estate in the property entrusted, the remainder interest being otherwise disposed of as provided therein, and *427 for that reason said attempted limitation is also void.In order to resolve any question that might arise in connection with my estate and the disposition thereof and without prejudice to my position of strict adherence to the provisions of said agreement, if my death shall occur on or after April 1, 1975, I give and bequath to my son, JAMES J. PATTERSON, if he survives me, any interest that I may have (exclusive of my interest in the Tribune-News Employees Trust) in and to shares of capital stock of Tribune Company, A Delaware corporation, (or of any corporation with which Tribune Company shall have consolidated or merged or to which Tribune Company shall have transferred all of its assets) and if any part or all of such shares shall have been sold, the proceeds of such sale. On or after May 16, 1950, decedent's son received a letter and envelope written in decedent's handwriting. In its entirety the letter stated as follows: May 16, 1950 Dearest Jim: You and I have discussed on a number of occasions the matter of your father's will and the power of appointment given to me to dispose of my 16-2/3% of the units of beneficial interest in the McCormick-Patterson Trust held by *428 the Trustees for me for life and whether or not you should take any steps to have the will conformed to the antenuptial agreement between your father and me, executed in 1938. As you know, under the 1983 antenuptial agreement I was given only a life estate, the remainder going to you upon my death, or if you were not living, as I appoint among your widow and children. I have been advised by my attorneys that you were a donee beneficiary under the 1938 antenuptial agreement and that the agreement could not be changed by your father and me in respect to this disposition of this interest. For this reason, I am making no disposition whatever of this 16-2/3% interest as it belongs to you under the terms of the antenuptial contract. In a will which I am preparing to execute at this time I am making reference to the provisions of the 1938 agreement, am noting that they are contravened by the provisions of your father's will, and am deliberately refraining from attempting to exercise the power of appointment your father's will purports to create. It is my understanding that this 16-2/3% interest in the McCormick-Patterson Trust will pass to you by force of the 1938 antenuptial agreement *429 regardless of what I may or can do, and, therefore, I do not see any reason, under the circumstances, why it should be necessary for you to take any action to conform your father's will to the antenuptial agreement. All my love Mother After decedent's death on December 27, 1975, her last will and testament and codicil were probated in the Surrogate's Court of Bronx County, New York. At the time of decedent's death, the fair market value of Tribune Company stock was $30,000 per share. During decedent's life, neither she nor her son brought a proceeding to enforce any provision of the Antenuptial Agreement. However, decedent and her son had consulted legal counsel regarding the discrepancy between the provisions of the Antenuptical Agreement and Mr. Patterson's will which pertained to the disposition of Mr. Patterson's beneficial interest in the M-P Trust. The Federal estate tax return for decedent's estate reported a total gross estate of $672,610.89, a taxable estate of $541,559.44, and gross and net estate tax payable of $146,183.42. In his statutory notice of deficiency respondent increased the taxable estate to $3,702,282 and computed the total estate tax liability to *430 be $1,636,546.38. Respondent explained his adjustments, in relevant part stating: It is determined that decedent had, at date of death, a claim against the Trustees of Trust Fund B, set up under paragraph Seventh of the Last Will and Testament of Joseph Medill Patterson, for distribution to her outright of 58-1/6 shares of Tribune Company from the corpus of said Trust Fund. In the alternative, it is determined that decedent transferred the trust corpus on April 1, 1975 while reserving to herself an income interest which transfer is includable in the gross estate pursuant to section 2036 of the Internal Revenue Code. It is further determined that the fair market value, at date of death, of 58-1/6 shares of Tribune Company was $1,745,000.00 or $30,000.00 per share. Accordingly, the taxable estate is increased by $1,745,000.00. Respondent takes the position that the value of the 58-1/6 shares of Tribune Company stock must be included in decedent's estate under section 2031[7] or, in the alternative, under section 2036. [8] Respondent contends that a portion of Mr. Patterson's beneficial interest in the M-P Trust, the corpus of which consisted of the Tribune *431 Company stock, passed outright to decedent at Mr. Patterson's death pursuant to the terms of his will. On the other hand, petitioner asserts that decedent received a life interest in 16-2/3 percent of Mr. Patterson's interest in the M-P Trust pursuant to the provisions of the Antenuptial Agreement. Petitioner contends that decedent's life interest in the shares extinguished at the time of her death and that consequently decedent's estate should not include any value attributable to the stock. Petitioner's position rejects respondent's theory that the provisions of Mr. Patterson's will superseded those of the Antenuptial Agreement; rather, petitioner advances the theory that the Antenuptial Agreement worked in preference to the will to dispose of Mr. Patterson's beneficial interest. [9] We find petitioner's position to be without merit. *432 The language of the Antenuptial Agreement clearly provided that Mr. Patterson's obligations thereunder to decedent could be effectuated only by his taking further affirmative actions. The provisions specified either that during his lifetime Mr. Patterson would give decedent outright 16-2/3 percent of his beneficial interest in the Tribute Company stock, or that he would make a testamentary transfer of a portion of his beneficial interest in the stock to decedent for her life if his son did not predecease him. Mr. Patterson chose not to make a lifetime transfer of his beneficial interest to decedent. Instead, he decided to provide for decedent in his subsequently executed will. On brief respondent argues that Mr. Patterson showed his intent to fulfill his Antenuptial Agreement obligations to decedent by providing her with a larger interest in his beneficial interest in the M-P Trust than promised. Respondent reasons that because decedent effectively received combined lifetime and remainder interests in the stock, the outright testamentary transfer did not diminish or deprive decedent of any portion of the promised beneficial interest. Respondent argues that for purposes of determining *433 the interest, if any, that decedent had at her death in the Tribune Company stock, under New York law, Mr. Patterson's will should be given full force and effect in preference to the Antenuptial Agreement. In making this argument, respondent relies in large part on Irving Trust Company v. day,314 U.S. 556 (1942). In Irving Trust Company,supra, Helena Day Snyder and John J. McGlone executed an antenuptial agreement on February 2, 1922, two days prior to their marriage. By the terms of the antenuptial agreement, Ms. Snyder voluntarily renounced her rights to any portion of Mr. McGlone's estate even though, under existing New York law, a widow had dower rights in her husband's real estate. The law of descent otherwise left her husband free to make testamentary disposition of his property as he wished. On August 21, 1930, Mr. McGlone executed a will in which one clause recited Ms. Snyder's waiver, but nevertheless he provided a bequest of $2,000 to her as a "slight token" of his affection and admiration. Thereafter, on September 1, 1930, a new New York law took effect prospectively; it permitted a spouse or prospective spouse to waive all *434 rights to the other spouse's estate but required that the waiver be perpetuated "by an instrument subscribed and duly acknowledged." N.Y. Decedent Estate Law, sec. 18, subd. 9 (1930 N.Y. Laws, c. 174, sec. 1). On July 6, 1934, Mr. McGlone executed a codicil to his will, which caused his August 21, 1930, will to be republished. The codicil brought the will under the domain of the new law. The relevant issue was whether Ms. Snyder, as Mr. McGlone's widow, had a statutory right of election to take against Mr. McGlone's will. The Court found in the affirmative because the antenuptial agreement had not been duly acknowledged. The Court reasoned that Mr. McGlone voluntarily had acted to modify his disposition to his wife and stated (at 563) that-- the case is as if he had made a voluntary legacy to his wife despite her waiver.If the obligation of the waiver suffered impairment, it was only because he exercised further testamentary privileges with a condition attached, and thereby brought those consequences unwittingly or intentionally upon himself and his estate. [10]
*435 Likewise, in the instant case, we are of the opinion that the Antenuptial Agreement limited Mr. Patterson's obligations to decedent, but it did not curtail his testamentary privileges. Mr. Patterson was subject to New York law and was free to make a valid bequest to decedent of any or all of his property as long as he fulfilled his obligations to her under the Antenuptial Agreement. He did so. The Antenuptial Agreement terms did not restrict Mr. Patterson's disposition of his beneficial interest in the Tribune Company stock merely to a lifetime interest; in fact, thereunder he could make an outright gift of his beneficial interest during his lifetime without requiring new consideration from decedent. Although Mr. Patterson did not exercise the privilege of making such lifetime transfer, similar to the Irving Trust Company case, he exercised his testamentary privileges. In so doing, Mr. Patterson intentionally left to decedent both the life and remainder interests in 58-1/6 shares of Tribune Company stock, which transfer would have been permissible during his life under the Antenuptial Agreement's terms. [11]
*436 Decedent's obligations under the Antenuptial Agreement do not change our conclusion that she received her beneficial interest in the M-P Trust under the terms of Mr. Patterson's will. On decedent's part, the Antenuptial Agreement limited her right to take against the will; it did not restrict her right to take under Mr. Patterson's will. [12]
Petitioner argues that if the beneficial interest passed under Mr. Patterson's will, decedent actually did not accept the additional remainder interest. Petitioner first suggests that decedent was not required formally to decline or renounce the outright bequest, reasoning that a donation should not be presumed to have been accepted unless the gift is beneficial *437 to the donee and detrimental to another party. In the alternative, petitioner advances the position that decedent formally renounced the bequest by her May 16, 1950, letter to her son, by the terms of her will and codicil, and by the language of the Tribune Company stock certificate. We do not agree with petitioner. Under the law of New York as it existed at the date of Mr. Patterson's death and as applicable to the purported renunciation, a beneficiary under a will was entitled to renounce his or her legacy or devise on the theory that the testamentary disposition constituted an offer which the legatee or devisee was free to reject. [13]Oliver v. Wells,254 N.Y. 451, 173 N.E. 676 (1930); Albany Hospital v. Hanson,214 N.Y. 435, 108 N.E. 812 (1915); In re Matthiessen's Will,175 Misc. 466, 23 N.Y.S.2d 802 (Orange County Surr. Ct. 1940); In re Johnston's Will,164 Misc. 469, 298 N.Y.S. 957 (Kings County Surr. Ct. 1937). See discussion in In re Wilson's Estate,298 N.Y. 398, 83 N.E.2d 852, 854 (1949); *438 In re Behn's Estate,201 Misc. 12, 106 N.Y.S.2d 118 (N.Y. County Surr. Ct. 1951). There is a rebuttable presumption that a legacy will be accepted. In re Wilson's Estate,supra;Albany Hospital v. Hanson,supra.If the legacy is accepted, the legatee's title to the bequeathed property relates back to the date of the testator's death. On the other hand, if the legacy is disclaimed, under New York law title is deemed to never have vested in the legatee. Albany Hospital v. Hanson,supra.
*439 Contrary to petitioner's suggestion, it is well settled in New York that a legatee need never formally accept an unconditional legacy for the property which is the subject of the legacy to vest in him. However, regardless of the effect that a renunciation would have on other persons, an affirmative act is necessary before a legacy is to be deemed declined. In re Wilson's Estate,supra;Matter of Estate of Ayres,91 Misc.2d 400, 397 N.Y.S.2d 1017 (Orange County Surr. Ct. 1977); Matter of Estate of Bertram,89 Misc.2d 55, 389 N.Y.S.2d 999, 1002 (Westchester County Surr. Ct. 1976). Such affirmative action must be "clear and unequivocal." Matter of Estate of Bertram, supra at 1002; In re Carpenter's Estate,36 Misc.2d 346, 232 N.Y.S.2d 892, 894 (N.Y. County Surr. Ct. 1962). In order for a legacy not to be included in a decedent's estate, it must initially be established that under applicable State law the disclaimer is sufficient to prevent the interest in the property which is the subject of the bequest from vesting in the *440 legatee. Brown v. Routzahn,63 F.2d 914 (6th Cir. 1933); Estate of Dreyer v. Commissioner,68 T.C. 275, 293 (1977); Estate of Hoenig v. Commissioner,66 T.C. 471, 477 (1976). However, as we pointed out in Estate of Hoenig v. Commissioner,supra at 477, "A legacy effectively disclaimed under State law will be excluded from the gross estate of the legatee if the disclaimer has been made within a reasonable time as understood in Federal precedents." See also Keinath v. Commissioner,480 F.2d 57 (8th Cir. 1973), revg. on other grounds 58 T.C. 352 (1972); First National Bank of Montgomery v. United States,176 F.Supp. 768, 775 (M.D. Ala. 1959). In our view petitioner has failed to show that decedent made an effective disclaimer of Mr. Patterson's legacy to her under New York law. As we have previously pointed out, under New York law as it existed at the date of Mr. Patterson's death, a clear and unequivocal affirmative act by the legatee is necessary before a legacy is deemed to be declined. This record shows no clear and unequivocal act by decedent renouncing *441 her legacy. The first action shown is a letter to her son dated May 16, 1950, almost 4 years after Mr. Patterson's death. The record does not show when decedent's son received this letter. In any event, the letter in effect states that decedent does not renounce her legacy but suggests to her son that he can rely on the Antenuptial Agreement to the extent he is a third party beneficiary. The record shows no further action until 1968 when decedent made her will which was modified in 1975 by a codicil. The record shows no notice of any kind given by decedent to the executors of Mr. Patterson's estate or to the Surrogate's Court of any intention to renounce her legacy. We conclude that decedent did not effectively disclaim her legacy under New York law. In re Estate of Weinig,66 Misc.2d 216, 320 N.Y.S.2d 341 (Nassau County Surr. Ct. 1971). We also conclude that the actions which petitioner contends should be considered as a renunciation by decedent of her legacy, were not taken within a reasonable time after Mr. Patterson's death. As a general rule, a reasonable time has *442 elapsed where benefits have been derived from the legacy or where the legatee has waited for events to determine whether acceptance or renunciation is the most advantageous route. Keinath v. Commissioner,supra,Estate of Hoenig,supra at 4779, First National Bank of Montgomery,supra;Fuller v. Commissioner,37 T.C. 147, 155 (1961). See also Jewett v. Commissioner,455 U.S. 305 (1982). Under New York law, a disclaimer may be deemed valid even though a long period of time has passed prior to a legatee's entering a disclaimer; however, the reasonable time standard does not depend upon a pure mathematical calculation. Rather, its parameters depend on all the facts and circumstances of each case. Keinath v. Commissioner,supra at 62; In re Wilson's Eatate,supra at 855. We have reviewed all the facts and circumstances in the instant case, and we disagree with petitioner's alternative argument that decedent's May 1950 letter to her son, the provisions of her 1968 will and 1975 codicil, and the November 1974 directive to the Tribune Company on the stock certificate's issuance constituted *443 a timely renunciation of the outright bequest. Mr. Patterson died in May 1946; it was not until 4 years later, after seeking legal counsel, that decedent wrote the letter indicating to her son that she still recognized the provisions of the Antenuptial Agreement and believed Mr. Patterson's will to contravene them. By that time, decedent had already received and accepted dividend income from the Tribune Company stock. As a trustee of the testamentary trust, decedent had exercised control over it and had allowed all testamentary trust expenses to be charged periodically against miscellaneous trust assets. [14] Decedent had made no apparent attempt during the 4-year period to reject the bequest or to give the appearance that she would not accept all benefits commensurate with the receipt of an outright interest in the Tribune Company stock. Even after the 4-year period, she did not reject the benefits but merely suggested that her son had rights under the Antenuptial Agreement. Nothing in this record indicates that she gave Mr. Patterson's other heirs any notice that she in any way questioned her rights under the will. In November 1974 decedent joined the other two testamentary trust *444 trustees, one of whom was her son, in asking the Tribune Company to issue the 58-1/6 shares of stock upon the termination of the M-P Trust in the name of "Mary K. Patterson, Life Tenant U/A JUN 27-38." Shortly thereafter, on November 15, 1974, before the stock certificate was issued, decedent and her son became the only trustees of the testamentary trust. In 1968, decedent attempted to restrict the size of her taxable estate by providing in her will that the testamentary power of appointment given under Mr. Patterson's will contravened their Antenuptial Agreement; she specifically refrained from exercising it. Seven years later, with the writing of her codicil, decedent provided that the remainder interest in the stock pass to her son outside her taxable estate. Yet, in Article SECOND of the codicil, decedent admitted the possibility that the remainder interest in the stock might not pass outside of her taxable estate. She provided in that event that it pass through her estate to her son. We are of the opinion that this series of delayed actions, a likely purpose of which may have been an attempt to limit the size of decedent's taxable estate and the amount of her estate taxes, did *445 not constitute a timely renunciation of the bequest. The record does not show the reason that decedent opted to act in the manner she did, but the result of her actions was that had her son predeceased her or had she been displeased with him, she could have exercised the power of appointment granted her in Mr. Patterson's will to dispose of her interest in the Tribune Company stock to someone other than her son. *446 We have concluded that decedent acquired by devise an outright interest in the 58-1/6 shares of Tribune Company stock. Unless the manner of the issuance of the shares in 1975 were to be considered as an assignment of a part of decedent's interest in the Tribune Company shares, she made no transfer of these shares prior to her death. [15]
We therefore conclude that the value of the 58-1/6 shares of Tribune Company stock is includable in decedent's gross estate. Because other issues were disposed of by agreement of the parties, Decision will be entered under Rule 155.
Footnotes
1. This fact was stipulated by the parties. Paragraph 1 of the petition in this case which was admitted by respondent in his answer, stated as follows: "Petitioner, James J. Patterson, residing at 572 Hornblower Lane, Long Boat Key, Florida 33548, is the duly appointed executor under Article Seventh of the Last Will and Testament of the late Mary King Patterson, who died while a resident of New York State, on December 27, 1975."↩
2. Robert R. McCormick and Mr. Patterson were cousins. Their grandfather was Joseph Medill, the founder of the Tribune Company.↩
3. On July 27, 1944, decedent and her husband amended Article SECOND of the Antenuptial Agreement. This amendment has no relevance to the articles of the Antenuptial Agreement pertinent to the instant case. ↩
4. Mr. Patterson made alternate provisions in the event that one or more of his three daughters predeceased him leaving no child, children or grandchildren, and in the event his wife or son predeceased him.↩
5. At the termination of the M-P Trust, the trustees were H. F. Grumhaus, W. D. Maxwell, F. A. Nichols, J. Howard Wood, and Ruth Tankersley as successors to Robert R. McCormick; and J. J. Patterson and W. H. James as successors to J. M. Patterson.↩
6. Subsequent to decedent's death and surrender of her stock certificate, the Tribune Company issued a new stock certificate in the name of "James J. Patterson."↩
7. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the date of death.
Sec. 2031(a) provides as follows: SEC. 2031. DEFINITION OF GROSS ESTATE. (a) General.--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. Petitioner suggests that sec. 2033 may be applicable in conjunction with or in lieu of sec. 2031. Sec. 2033 provides: SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST. The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. By its statement petitioner fails to recognize that the broad language of sec. 2031 incorporates secs. 2033 through 2044. Sec. 20.2031-1(a), Income Tax Regs.↩
8. Sec. 2036(a) provides as follows: SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. ↩
9. On opening brief, petitioner argues at length that the Antenuptial Agreement was a valid contract. In his reply brief, respondent does not dispute that the Antenuptial Agreement was valid.↩
10. See also In re Griffiths' Will,38 Misc.2d 87, 237 N.Y.S.2d 44, 48 (Westchester County Surr. Ct. 1963), where the court stated: Clearly, the decedent was free to consent to a cancellation of the prenuptial agreement or to make a valid devise or bequest to his wife, despite the waiver by her, if he saw fit to do so ( Irving Trust Co. v. Day, 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452↩).
11. See In re Willett's Estate,178 Misc. 1000, 36 N.Y.S. 2d 992, 995-996 (N.Y. County Surr. Ct. 1942), where a testator and his intended wife agreed in an antenuptial agreement that neither would have a claim against the estate of the other and that if the intended wife survived the testator, she would receive $7,500 in full satisfaction of any claim against the testator's estate. The testator had executed his will prior to the execution of the antenuptial agreement; the will left more to his surviving wife than $7,500. The court indicated that the testator's execution of his will prior to the antenuptial agreement was of "no consequence" and stated: He [the testator] enlarged his right to dispose of his property by will in any way that his generosity or his conscience dictated, except as to the stipulated sum which Eve Haws [his intended wife] was to receive as matter of right. In no way did the decedent limit his right to bequeath a greater amount to his wife if he chose to do so. The antenuptial agreement reduced his obligations; it did not curtail his privileges. Each party expressly retained the power to have his or her estate vest in his or her "legatees, or devisees, as may be prescribed by his, or her, last will and testament".↩
12. In the Irving Trust Company case the Court of Appeals of New York considered this same factor. There, Chief Judge Lehman wrote: "The wife [Helena Day Snyder] did not, of course, waive her right to take any part of the estate of 'her husband to be' [John J. McGlone] which he chose to bequeath to her." In re McGlone's Will,284 N.Y. 527, 533, 32 N.E.2d 539, 542 (1940), affd. sub nom. Irving Trust Company v. Day,314 U.S. 556↩ (1942).
13. At the time of Mr. Patterson's death in 1946, New York common law created the rules of renunciation. In 1971 the New York legislature enacted N.Y. Est., Powers & Trusts Law, sec. 3-3.10 (McKinney 1980), which set forth the method and time for a beneficiary under a will, or his representative, to renounce a testamentary disposition. In part, sec. 3-3.10 provided: (a) Any testamentary beneficiary, including a person whose interest is created or increased by the renunciation of another under this section, may renounce all or part of his interest. Such renunciation shall be in writing, signed and acknowledged by the person renouncing, and shall be filed in the surrogate's court having jurisdiction over the decedent's estate within one year after the will making the disposition to be renounced in whole or in part has been admitted to probate, or in the event such disposition is of a future estate, not later than one year after it becomes an estate in possession. Notice of such renunciation shall be served personally or in such manner as the surrogate may direct upon the fiduciary directed by the will to make the disposition to be renounced in whole or in part and by mail or in such manner as the surrogate may direct upon all persons whose interest in the estate may be increased by reason of such renunciation.The time to file and serve a renunciation may be extended, in the discretion of the surrogate, on a petition showing reasonable cause and on notice to such persons and in such manner as the surrogate may direct. The time limited in this section for filing and serving a renunciation is exclusive, and shall not be suspended or otherwise affected by any other provision of law. The new statutory provision did not change the substantive rights of a beneficiary under a will to renounce; rather its purpose was to primarily remove any lack of certainty existing in the New York common law area of renunciation. See In re Estate of Weinig,66 Misc.2d 216, 320 N.Y.S.2d 341 (Nassau County Surr. Ct. 1971).
In 1977, sec. 3-3.10 was superseded by N.Y. Est., Powers & Trusts Law, sec. 2-1.11 (McKinney 1981). Neither sec. 3-3.10 nor sec. 2-1.11↩ preempted the entire area regarding renunciation of bequests since each statute contained a subdivision that preserved the common law right to renounce.
14. The parties stipulated that -- Dividends paid upon the Tribune Company stock underlying the one-sixth beneficial interest described above were promptly paid to Mary K. Patterson by these corporate employees. At no time were any expenses charged directly or indirectly against Mary K. Patterson or the beneficial interest given to her in Exhibit C-3, or against income received by her on that interest, because of said beneficial interest being administered as part of the JMP Trust [testamentary trust]. Certain expenses were charged periodically against miscellaneous assets in the JMP Trust. It appears that had decedent renounced her legacy under the will, she would have had no interest in the testamentary trust created under that will even if she had enforced her right under the Antenuptial Agreement to a life interest in 16-2/3 percent of Mr. Patterson's beneficial interest in the M-P Trust.↩
15. If the manner of the issuance of these shares were considered a transfer by decedent, such transfer would clearly fall within the provisions of section 2036↩.